IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LISA L. WATSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL NO. |
| vs. | § | SA-17-CV-1280-OLG |
| | § | |
| MARK ESPER, SECRETARY, | § | |
| DEPARTMENT OF THE ARMY; | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Dismiss [#10], which

the Court has converted into a Motion for Summary Judgment due to the large number of

exhibits and evidence attached to Defendant's motion and Plaintiff's response. *See* Fed. R. Civ.

P. 12(d). In the Court's Order informing the parties of this procedural decision [#20], the Court

gave both parties the opportunity to supplement the record as to any additional evidence they

would like considered. Accordingly, the Court has considered the following responses,

supplemental briefing, and evidence in issuing this recommendation: Plaintiff's *Pro Se*

Response to Defendant's Motion to Dismiss [#11], Plaintiff's *Pro Se* Motion for Acceptance of

359 Documents Pertaining to Lisa Watson's Case [#13], Defendant's Reply in Support of

Motion to Dismiss [#14], Plaintiff's *Pro Se* Motion for Admission of Evidence Confirming

Additional Discovery is Not Needed [#18], Defendant's Supplementary Motion for Summary

Judgment Briefing [#21], and Plaintiff's Response to Defendant's Supplementary Briefing [#22].

All pretrial matters in this case have been referred to the undersigned for disposition

pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#12], and the

undersigned has authority to enter a recommendation as to Defendant's Motion for Summary Judgment pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's Motion to Dismiss, which has been converted into a Motion for Summary Judgment [#10], be **GRANTED**.

## I.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131

(5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.  Although courts afford liberal construction to the pleadings of *pro se* litigants, individuals proceeding without counsel still must adhere to the procedural requirements of the Federal Rules of Civil Procedure.  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).  This includes the evidentiary rules for summary judgment.  *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("Although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials.") (footnote omitted).

## II.  Background and Summary Judgment Record

This is an employment discrimination action arising under Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*  Plaintiff Lisa Watson, an African-American female, filed this action, proceeding *pro se*, against her former employer, the Department of the Army ("Defendant"), alleging that Defendant failed to select her for several permanent auditor positions, unjustifiably placed her on a Performance Improvement Plan, subjected her to a hostile work environment, and ultimately terminated her employment, due to her race and national origin (non-Hispanic) or in retaliation for her engagement in activity protected by Title VII.  (Compl. [#1] at ¶¶ 7–8.)

The summary-judgment record[1] in this case establishes the following facts pertinent to Watson's claims. At the time giving rise to the events in this suit, Watson worked as a GS-9 Medical Records Administrative Specialist within the Department of the Army's Patient Administration System and Biostatics Activity (PASBA) at Fort Sam Houston, Texas. (Report of Investigation ("ROI") [#10-2] at 5.) Watson was hired on July 17, 2012 pursuant to a term appointment that was not to extend beyond June 17, 2015. (ROI [#10-2] at 5; Notice of Term Employment [#10-2] at 94.) In this position, Watson was responsible for planning and performing audits of outpatient/inpatient medical coding processes throughout PASBA, as well as assisting personnel with the MEDCOM performing documentation or coding functions and serving as a coding/documentation consultant on staff assistant teams. (ROI [#10-2] at 5.)

In October 2012, shortly after Watson began her employment, she received her first performance counseling and a Senior System Civilian Evaluation Report that outlined the objectives and performance standards expected for her position. (ROI [#10-2] at 6; Oct. 2012 Counseling [#10-3] at 25; Senior System Civilian Evaluation Rep. [#10-3] at 12.) The counseling document indicated that based on initial coding results from Quality Assurance ("QA") Watson's performance would be rated as "Fails" had she been under performance standards during her first few months of employment. (ROI [#10-2] at 6.) The counseling documented an intent to develop a focused plan with Watson to help her achieve success on QA objectives. (*Id.*) Watson received additional performance counseling in November 2012 and December 2012, again indicating her productivity was "unacceptable" to date and would be rated

---

[1] The record contains submissions by Watson, such as unsworn statements and letters, that are not competent summary judgment evidence. *See Gordon*, 622 F.2d at 123. Regardless of whether these submissions are proper summary judgment evidence, the undersigned has reviewed the information they contain, and even if the information contained therein had been submitted as competent summary judgment evidence, that information would not have changed the undersigned's conclusion or recommendation.

as "FAIL" if rated at the end of the performance period. (ROI [#10-2] at 6; Nov. 2012 Counseling [#10-2] at 64; Dec. 2012 Counseling [#10-2] at 72.) The counseling documents also informed Watson that she "must make substantial improvement in productivity in order to meet performance standards." (Nov. 2012 Counseling [#10-2] at 64; Dec. 2012 Counseling [#10-2] at 72.)

During this same time period, Watson applied for two permanent Medical Records Administrative Specialist positions at HQ MEDCOM. (ROI [#10-2] at 5.) In early January 2013, Watson found out she was not selected for either position. (*Id.*) Shortly thereafter, on January 10, 2013, Watson made initial contact with the Equal Employment Opportunity (EEO) office at Fort Sam Houston. (Mem. re: Compl. [#10-2] at 242.) At her January 16, 2013 initial interview with an EEO officer, Watson complained of a hostile work environment and harassment based on her race and national origin. (*Id.*) That same day, Watson was advised of her rights and responsibilities to pursue her Equal Employment Opportunity Complaint. (EEO Communication [#10-2] at 233–40.)

In the months that followed, Watson continued to receive additional counseling regarding her performance. (ROI [#10-2] at 6; Feb. 2013 Counseling [#10-2] at 494; Mar. 2013 Counseling [#10-3] at 1.) These forms documented that Watson's productivity would still be rated as "FAIL" if reviewed at the end of the performance period and warned Watson that the recommendation of a formal Performance Improvement Plan ("PIP") was the next step if her performance did not improve. (Feb. 2013 Counseling [#10-2] at 494; March 2013 Counseling [#10-3] at 1.) The counseling forms also informed Watson of her reassignment of duties to a different audit, which Watson refers to repeatedly in her filings as a "dead audit," to afford her the opportunity to improve her productivity. (*Id.*)

In early March 2013, Watson received notice from an Equal Opportunity Specialist of her right to file a formal complaint of discrimination, and Watson did so on March 19, 2013. (Notice [#10-2] at 23–24; EEO Compl. [#10-2] at 20–21.) Watson's complaint alleged she had been subjected to a hostile work environment based on race, color, and reprisal. (EEO Compl. [#10-2] at 20–21.) Approximately one week later, on March 27, 2013, Watson was placed on a PIP by her supervisor Minerva Leal and advised that she had 45 days to raise her performance to a successful level. (ROI [#10-2] at 6; PIP [#10-3] at 230–41.) The primary goals set forth in the PIP were to increase audit productivity and accuracy. (PIP Activity [#10-6] at 369.) A "Weekly Follow-Up Discussion Document" dated April 12, 2013 documents that Watson had thus far failed to improve her productivity and accuracy as outlined in her PIP. (Apr. 2013 Follow-Up [#10-6] at 344.)

On May 8, 2013, Watson received a communication from an EEO officer that part of her complaint was being dismissed for failure to state a claim and the remainder of her complaint would be formally investigated. (Mem. Re: Compl. [#10-2] at 251.) Watson thereafter amended her complaint to include complaints regarding the allegedly unwarranted PIP. (Amendment [#10-2] at 254.)

On June 3, 2013, Watson received a PIP Summation and Recommendation from Ms. Leal summarizing Defendant's efforts to help Watson raise her performance to a successful level within the 45-day period. (ROI [#10-2] at 6; PIP Summation [#10-3] at 97–101.) The summation states since Watson failed to successfully complete the PIP, adverse actions would be pursued. (ROI [#10-2] at 6; PIP Summation [#10-3] at 101.) On June 18, 2013, Ms. Leal advised Watson of her proposed removal from employment due to unacceptable performance. (ROI [#10-2] at 6; June 18, 2013 Ltr. [#10-4] at 420–24.) The Notice of Decision of Proposed

Removal memorandum, provided to Watson, advised her that she would be removed from Federal Service effective July 19, 2013, for failure to raise her performance to a successful level during the PIP period. (ROI [#10-2] at 6; June 18, 2013 Ltr. [#10-4] at 420–24.) Watson was given the opportunity to provide a response to the memorandum, which was reviewed by Defendant's Deputy Director Royce Staley. (July 18, 2019 Ltr. [#10-5] at 50–51.) Mr. Staley agreed with Ms. Leal's recommendation that Watson should be terminated, effective July 19, 2013. (*Id.*)

After Watson's termination, she continued to apply for permanent Medical Records Administrative Specialist positions with Defendant, but she was not referred for consideration. (ROI [#10-2] at 5–6.) Watson repeatedly amended her complaint for purposes of the EEO investigation after her employment was terminated in order to add additional allegations. (Amendments [#10-2] at 256–60, 262–63, 265–66, 268–69, 271–73, 275–76.) The EEO investigation resulted in a finding of no discrimination, and the Army provided Watson with a copy of the findings of nondiscrimination and informed Watson of her right to request a hearing before an Administrative Judge. (EEOC Dec. on Appeal [#1] at 25.)

Watson timely requested a hearing, which was held on January 28, 2015 and February 11, 2015. (EEOC Dec. on Appeal [#1] at 25.) The Administrative Judge issued an unfavorable decision on March 20, 2015, and Watson appealed to the Equal Employment Opportunity Commission ("EEOC"). (EEOC Dec. on Appeal [#1] at 24–30.) The EEOC affirmed the finding of no discrimination on June 2, 2017, and the EEOC denied Watson's request for reconsideration on September 21, 2017. (*Id.*; EEOC Decision on Request for Reconsideration [#1] at 19–21.) Watson timely filed this lawsuit on December 20, 2017. Then, as is noted above, Defendant filed a motion to dismiss, which the Court converted into a summary judgment motion and

permitted the parties to submit additional evidence. The record is now complete and the motion ripe for disposition.

### III. Analysis

Watson's claims of discrimination, retaliation, and a hostile work environment under Title VII fail as a matter of law. Watson cannot establish a *prima facie* case of discrimination, harassment, or retaliation. Even if Watson could establish her *prima facie* case, Defendant has proffered legitimate, nondiscriminatory reasons for terminating Watson's employment and not selecting her for permanent positions, and Watson has failed to rebut Defendant's stated reason as pretext for discrimination.

**A.      Watson's discrimination claims fail as a matter of law.**

Title VII makes it unlawful for an employer to discharge an employee because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 (5th Cir. 2016). When a plaintiff offers only circumstantial evidence, as here, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). To establish a *prima facie* case of discrimination, the plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated or that the plaintiff was replaced by someone outside the protected class. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).

A plaintiff's *prima facie* case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Rutherford*, 197 F.3d at 180. This burden is one of production, not persuasion, and can involve no assessment of credibility. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of that stated reason, the inference of discrimination disappears, and the burden of proof shifts back to the plaintiff to demonstrate the employer's articulated reason for the adverse employment action was merely a pretext for discrimination. *Rutherford*, 197 F.3d at 180.

     i.   <u>Watson's submissions do not establish a prima facie case of discrimination.</u>

Under the *McDonnell Douglass* framework, Defendant is entitled to summary judgment because Watson has not established a *prima facie* case. Watson's Complaint contains allegations of the following grievances underlying her discrimination claims: (1) unwarranted and abusive verbal and written reprimands, including threats of termination or demotion; (2) unjustified placement on a PIP; (3) denial of ability to work overtime or for compensatory time; (4) subjection to an unfair grading system and disparate time and attendance standards; (5) subjection to disparate work assignments; (6) denial of requests for leave and training; (7) lack of selection for permanent employment; and (8) termination. (Compl. [#1] at ¶ 8.) Under Fifth Circuit jurisprudence, an adverse employment action in the context of Title VII discrimination[2] means "an ultimate employment decision, such as hiring, granting leave, discharging, promoting

_____

[2] The scope of adverse employment actions in the context of Title VII retaliation is broader. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (discussed *infra* at Section III.B).

and compensating." *Foley v. University of Houston System*, 355 F.3d 333, 340 (5th Cir. 2003). Accordingly, only Watson's termination, denial of leave, and lack of selection for permanent employment potentially constitute adverse employment actions for the purposes of her discrimination claim. *See Pegrum v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).

With respect to these adverse actions, Defendant contends that Watson cannot satisfy her *prima facie* burden because she cannot demonstrate that similarly situated employees outside of her protected class received better treatment; that Watson was replaced by someone outside of her protected class; or Watson was not offered employment in favor of a person outside of her protected class. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The undersigned agrees. To satisfy the fourth element of her *prima facie* case of discrimination, Watson must show that Defendant gave preferential treatment to another employee outside the protected class under "nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). In other words, the employees being compared must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* "And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* Watson has failed to meet this burden.

Watson has not identified any specific comparator with respect to her termination and denial of leave allegations. In fact, there is no evidence in the record that she was replaced by anyone after she was terminated, let alone someone outside of her protected class. Accordingly, Watson cannot establish a *prima facie* case of discrimination claim based on these alleged adverse employment actions. *See Garza v. N.E. Indep. Sch. Dist.*, 415 Fed. App'x 520, 523 (5th

Cir. 2011) (affirming summary judgment on discrimination claim where plaintiff could not prove she was replaced by someone outside of her protected class).

As to Watson's allegations regarding Defendants' failure to hire her for a permanent position, the only comparator identified in the record is Mary Saenz, a Hispanic woman selected for vacancy number 027272, which was posted in November 2012 and filled in January 2013.[3] (Announcement [#10-8] at 103.)  Watson argues that she was more qualified than Saenz, and there is some evidence in the record that supports this assertion.  Ms. Saenz's resume indicates that, although she was a Certified Coding Specialist (like Watson), she was still working towards her Registered Health Information Administrator (RHIA) certification, which Watson already held at the time of application. (Compare Watson Resume [#10-3] at 145–48 with Saenz Resume [#10-3] at 149–53.)   Additionally, Watson obtained a Bachelor's Degree in Health Record Administration, whereas Saenz only holds an Associate's Degree.  (*Id.*)  However, despite any difference in qualifications, it is undisputed that by January 2013—when the hiring decision was made—Watson had already received multiple performance counseling documents, all of which rated Watson's performance as failing.   (Oct. 2012 Counseling [#10-3] at 25; Nov. 2012 Counseling [#10-2] at 64; Dec. 2012 Counseling [#10-2] at 72.)  As Saenz was not an internal candidate, the Court does not have knowledge of her performance at her previous position. Nonetheless, Watson's documented performance issues distinguish her from Saenz, such that Saenz was not a similarly situated comparator.  Regarding the other positions at issue, Watson does not identify a comparator.  Watson has therefore failed to establish a *prima facie* case of

---

[3]  There is reference in some of Watson's filings to the hiring of two Hispanic women in January 2013, but the hiring record indicates that only Saenz was offered employment. (Announcement [#10-8] at 103.)

discrimination because she has either failed to identify a comparator or she has failed to demonstrate that her identified comparator was similar situated yet treated more favorably.

ii. Defendant has met its burden to proffer evidence of legitimate, nondiscriminatory reasons for its actions, yet Watson has proffered no evidence of pretext.

Moreover, even if Watson had identified a valid comparator and satisfied her *prima facie* burden, Defendant would still be entitled to summary judgment because it has proffered competent summary judgment evidence of a nondiscriminatory reason for the termination and decision not to hire or promote Watson—her documented pattern of performance issues—and Watson has failed to establish pretext. (*See* Oct. 2012 Counseling [#10-3] at 25; Senior System Civilian Evaluation Rep. [#10-3] at 12; Nov. 2012 Counseling [#10-2] at 64; Dec. 2012 Counseling [#10-2] at 72; Feb. 2013 Counseling [#10-2] at 494; Mar. 2013 Counseling [#10-3] at 1; PIP [#10-3] at 230–41.)

Watson does not identify any evidence that Defendant's decision not to hire her for a permanent position was pretext for race or national-origin discrimination. To the contrary, the summary judgment record demonstrates that Watson was not referred for the two permanent positions for which she applied after her termination because she was deemed objectively ineligible for both positions. As to vacancy number 937648, the evidence establishes that each applicant was given an Occupational Questionnaire, and only those applicants scoring 95 or higher were referred to the selecting official. (Hernandez Decl. [#10-7] at 257; Correspondence [#10-8] at 152.) Watson only earned a score of 91. (*Id.*) Watson was deemed ineligible for vacancy number 993790 because she did not provide Defendant with the required supporting documentation to prove that she fell under one of the specific categories of eligibility designated in the job posting. (Job Description [#10-7] at 290; Hernandez Decl. [#10-7] at 258–59.) This evidence remains unrebutted. Because there is no evidence in the record to support Watson's

allegation that she was not hired by Defendant due to her race or national origin, Watson's discrimination claims fail as a matter of law.

**B.      Watson's retaliation claim fails as a matter of law.**

Title VII also forbids retaliation by employers against employees who report workplace discrimination. *Crawford v. Met. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 273 (2009). The *McDonnell Douglas* framework applies to retaliation claims, too, and to establish a *prima facie* case of Title VII retaliation, a plaintiff must show the following: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556–57. To meet the third element, Plaintiff "must establish that her protected activity was a but-for cause of the alleged adverse action." *Zamora v. City Of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

Defendant does not dispute that Watson engaged in protected activity. "Protected activity" is defined as opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002) (citing 42 U.S.C. § 2000e–3(a)). Plaintiff engaged in protected activity by filing a formal EEO complaint of discrimination on March 19, 2013, after she was not selected for a permanent position with Defendant and had received a number of performance counseling documents. (EEO Compl. [#10-2] at 20–21.)

Waston also has established that Defendant took a materially adverse action against her. In the context of Title VII retaliation, the definition of an adverse employment action is broader

than in the context of Title VII discrimination; an employment action is "materially adverse" where it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Again, in addition to her termination and rejection for permanent employment, Watson alleges that her supervisors and coworkers demeaned and alienated her; that she was the subject of unwarranted reprimands; was unjustifiably placed on a PIP; was given disparate work assignments and specifically assigned to a "dead audit"; was evaluated based on an unfair grading system; and was denied requested leave and training. (Compl. [#1] at ¶ 8.) Even under the broader standard governing retaliation claims, however, the majority of these complaints do not constitute an adverse employment action for purposes of her retaliation claim.

For example, the Fifth Circuit has held that ostracism and rude treatment by coworkers or supervisors is not a materially adverse action under the *Burlington Northern* standard. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (holding that ostracism is a minor annoyance in the workplace and does not constitute a materially adverse employment action as a matter of law); *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484–85 (5th Cir. 2008) ("rude treatment" by a supervisor is insufficient as a matter of law to constitute materially adverse employment action). Circuit law also forecloses any contention by Plaintiff that her subjection to a less desirable audit, i.e., an adverse change in her work assignments, constituted an adverse employment action for purposes of her retaliation claim, as she does not allege a change in her pay, benefits, or level of responsibility as a result of the employer's action. *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) ("We have held, along with many of our sister circuits, that employment actions are not adverse where pay, benefits, and level of responsibility remain the same."); *see also Paul v. Elayn Hunt Corr. Ctr.*, 666 Fed. App'x 342, 347 (5th Cir. 2016)

(citing *Watts*, 170 F.3d at 512) (reassignments are not materially adverse unless accompanied by other change in employee status). Nor does Defendant's alleged denial of Watson's request for leave to attend a training constitute an adverse employment action, as there are no allegations that this decision affected Watson's right to take leave in general, only that they related to an individual leave request for a specific date and time. *Ogden v. Potter*, 397 Fed. App'x 938, 939 (5th Cir. 2010) (citation omitted) ("A single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general, because a reasonable employee would not have found the action to be materially adverse.").

Additionally, the Fifth Circuit has made clear that "written warnings and unfavorable performance reviews [such as PIPs] are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity." *Jackson v. Honeywell Int'l, Inc.*, 601 Fed. App'x 280, 286 (5th Cir. 2015) (citing *Burlington N.*, 548 U.S. at 68). Here, as in *Jackson*, Watson's documented performance deficiencies—specifically, her inability to meet established productivity and accuracy benchmarks—provided a colorable basis for placing Watson on a PIP. (*See* Oct. 2012 Counseling [#10-3] at 25; Nov. 2012 Counseling [#10-2] at 64; Dec. 2012 Counseling [#10-2] at 72; Feb. 2013 Counseling [#10-2] at 494; Mar. 2013 Counseling [#10-3] at 1.) Therefore, Watson's placement on a PIP cannot constitute an adverse employment action to support her retaliation claim. *See Jackson*, 601 Fed. App'x at 286. Thus, the only two acts of which Watson complains which could constitute an adverse employment action for purposes of her retaliation claim are Watson's termination and Defendant's failure to hire her for a permanent position.

The problem for Watson is she has proffered no evidence, aside from a temporal relationship, connecting her EEO activity with these adverse employment decisions. Temporal proximity can be enough to satisfy the causation element of a retaliation *prima facie* case, but only where the adverse action closely follows the protected activity. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (to support *prima facie* case of but-for causation, temporal proximity must be "very close"). But even if Watson could establish the causal connection element, Defendant would still be entitled to summary judgment.

Again, the *McDonnell Douglas* burden-shifting framework discussed above applies equally in unlawful retaliation cases. *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996). Under this framework, after Defendant comes forth with a legitimate, nonretaliatory reason for its actions, the ultimate burden is on Watson to proffer sufficient evidence such that "reasonable and fair-minded persons" could conclude that Defendant would not have subjected Watson to an adverse employment action "but for" her EEO activity. *Id.* at 308. Although temporal proximity may be enough to establish a *prima facie* case of retaliation, it is insufficient, standing alone, to establish pretext and defeat a motion for summary judgment as to the requirement of but-for causation after Defendant has proffered evidence of its legitimate reason. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012); *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007). Because Watson has not directed the Court to any other evidence to support her allegations of retaliation or that Defendant's proffered reasons are pretextual, her Title VII retaliation claim also fails as a matter of law.

**C.      Watson's harassment claim fails as a matter of law.**

Watson's claim of race-based harassment also fails as a matter of law.  In order to prevail on her claim of a hostile work environment, Watson must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).  For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (internal quotation omitted).  In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift*, 214 F.3d 615, 625 (5th Cir. 2000).  To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted).

Watson has failed to establish a *prima facie* case of a hostile work environment because she has failed to produce sufficient evidence from which a reasonable juror could conclude that the alleged harassment was based on her race.  Watson expressly states in her Complaint that she is not alleging she was ever subjected to any racially tainted epithets or racial perjoratives.  (Compl. [#1] at 169.)  And her Complaint only includes a few instances that arguably implicate

race at all: (1) the allegation that Watson's supervisor, Ms. Leal, told her to stop "chit chatting" with Ms. Hollis, a black female coworker, where Watson was permitted to talk to all other employees who were not black; (2) the allegation that Watson did not receive the same training upon hiring that two Hispanic colleagues enjoyed; and (3) the allegation that Watson was not permitted to work overtime or compensatory time as were her non-black coworkers. (Compl. [#1] at 7, 168, 169, 177.) Yet these allegations of discriminatory animus are unsupported by any competent evidence and therefore represent only Watson's subjective beliefs that she was the victim of race-based harassment. Watson does not allege—and there is no evidence in the record—that Ms. Leal or anyone else said anything with a racial epithet or perjorative. Instead, Watson has merely identified certain employment acts and has offered her belief that the reason they occured was her race.

For example, Watson provides no evidence to support her contention that her race was the reason she was not permitted to work overtime or compensatory time. The summary judgment record contains correspondence between Watson and Ms. Leal from November 2012—the time Watson was denied the ability to work overtime and compensatory time—in which Ms. Leal explained to Watson that compensatory time is only offered to those auditors who are meeting productivity standards. (Correspondence [#10-3] at 195–200.) At the time, it is undisputed that Watson had already received counseling for her substandard productivity. (Oct. 2012 Counseling [#10-3] at 25.) Similar evidence exists with respect to Watson's request for an alternate work schedule; Ms. Leal's communciations with Watson in June 2013 explained that she was not eligible for an alternate schedule due to her placement under a PIP at the time. (Correspondence [#10-3] at 200.)

Watson's subjective belief that her race, and not her productivity, was the real reason for the denial of her ability to work overtime and compensatory time or any other employer action is insufficient to create a fact issue without any evidence from which a reasonable factfinder could infer that Watson's perception was objectively reasonable. *See Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (affirming summary judgment where subjective perception of race-based harassment was not objectively reasonable); *Cavalier v. Clearlake Rehab. Hosp. Inc.*, No. CIV. A. H-07-678, 2008 WL 2047997, at *4 (S.D. Tex. May 12, 2008), *aff'd*, 306 Fed. App'x 104 (5th Cir. 2009) (granting summary judgment on claim of hostile work environment where majority of complained-of incidents did not implicate racial animus through words or conduct and finding no objectively reasonable basis to infer discriminatory intent). In summary, Watson does not allege that she was the victim of any conduct by Defendant that expressly implicated her race, and she has produced no evidence from which a factfinder could reasonably infer that the complained-of conduct was motivated by her race. Accordingly, her hostile work enviroment claim fails as a matter of law. *See Enclarde v. Louisiana's (LaDotd)*, No. CIV. A. 13-56-SCR, 2014 WL 545820, at *8 (M.D. La. Feb. 11, 2014) (granting summary judgment to employer on hostile work environment claim where plaintiff failed to present any competent summary judgment evidence "from which a reasonable trier of fact could infer that the actions the plaintiff complains about were motivated by race").

Furthermore, even if Watson could do so, the conduct she alleges does not rise to the level of severity and pervasiveness required to constitute an objectively hostile work environment as a matter of law. Watson's conclusory assertions that the employment issues she identifies were pervasive and due to racial animus is not sufficient to satisfy this standard. *See Ramsey*, 286 F.3d at 269 (affirming dismissal of hostile work environment claim where

plaintiff's vague assertions of ongoing racial animus were unsubantiated by any concrete examples of racial discrimination in the workplace).  Even in instances where the challenged behavior is explicitly racist, the Fifth Circuit has set a high bar of objectively offensive behaivor that must be established in order to prove a hostile working environment.  *See, e.g.*, *White v. Gov't Employees Ins. Co.*, 457 Fed. App'x 374, 380–82 (5th Cir. 2012) (affirming summary judgment for employer where client was referred to as a "nigger" in plaintiff's presence and references were made to the "ghetto" or a "FEMA trailer" because none of these comments were severe or frequent enough to objectively interfere with work performance); *cf. E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400–01 (5th Cir. 2007) (reversing summary judgment where evidence showed plaintiff was subjected to verbal harassment on regular basis for a full year in which he was contantly called "Taliban," referred to as an "Arab," mocked for his diet and prayer rituals, and accused of involvement in terrorist acts).  As such, Watson's hostile work environment claim fails as a matter of law.

## IV.  Conclusion and Recommendation

In summary, having considered Defendant's motion, the various responses, replies, and supplements thereto, and the summary judgment record, the undersigned **recommends** that Defendant's Motion to Dismiss, which the Court has converted into a Motion for Summary Judgment [#10], be **GRANTED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

      SIGNED this 26th day of February, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE